# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SASTIN 2, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1252-D |
| | ) | |
| HEMINGWAY ASSOCIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Concerned that subject matter jurisdiction was lacking under 28 U.S.C. § 1331, the Court directed the parties to brief the issue. [Doc. No. 26]. As the party seeking to invoke the jurisdiction of this Court, Plaintiff submitted an opening brief [Doc. No. 27], and Defendant filed a response [Doc. No. 28]. The matter is fully briefed and at issue.

## BACKGROUND

On November 21, 2017, Plaintiff initiated this action seeking declaratory and injunctive relief regarding two provisions of Defendant's Rules and Regulations. [Doc. No. 1]. Plaintiff is an Oklahoma LLC, which owns condominiums at the Hemingway Condominiums. Defendant is an Oklahoma not-for-profit, non-stock corporation (homeowner's association) tasked with managing the condominiums and their common elements.

Specifically, Plaintiff asserts that the provision prohibiting the installation of outside satellite dishes on condominium units violates § 207 of the Telecommunications Act of 1996 and 47 C.F.R. § 1.4000. Plaintiff also asserts that Defendant's assessment of fines

and penalties amounts to a state action that violates the Fourteenth Amendment of the United States Constitution. Plaintiff asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). In the alternative, Plaintiff suggests that diversity jurisdiction could be pleaded in an Amended Complaint, if necessary. Defendant asserts that there is no statutory private right of action under these circumstances, that state action is lacking under Plaintiff's constitutional claim, and that Plaintiff's argument that diversity jurisdiction now exists is without merit.

In briefing the issue of subject matter jurisdiction, the Court asked the parties to focus on two questions of law: (1) whether § 207 of the Telecommunications Act of 1996, or 47 C.F.R. § 1.4000, provide for a private right of action; and (2) whether the requisite state action has occurred. [Doc. No. 26].

**ANALYSIS**

Federal courts are courts of limited jurisdiction. *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1543 (10th Cir. 1996). "A court's jurisdiction is therefore presumed not to exist absent a showing by the party invoking federal jurisdiction." *Id.* Moreover, "'statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction.'" *Id.* (*quoting F&S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964)).

**A. Section 207 of the Telecommunications Act of 1996 and 47 C.F.R. § 1.4000 do not provide for a private right of action.**

As with any case involving the interpretation of a statute, the Court's analysis begins with the language of the statute itself. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568

(1979). Section 207 of the Telecommunications Act of 1996[1] provides:

> Within 180 days after the date of enactment of this Act, the Commission shall, pursuant to section 303 of the Communications Act of 1934, promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services.

By its terms, the statute authorizes the Federal Communications Commission ("FCC") to adopt regulations to carry out the statute's purpose. Absent from § 207 is any language indicating a congressional intent to provide a private right of action.

In *Redington*, the Supreme Court cautioned that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Redington*, 442 U.S. at 571 (finding that the plain language of the statute weighed against implication of a private remedy). In reaching its decision, the Supreme Court in *Redington* relied on the statutory scheme in which the provision was found. *Id.* at 571. The relevant provision was flanked by provisions that explicitly granted private causes of action; thus, the Court concluded that Congress knew how to provide a private remedy when it wanted to do so. *Id*. at 571-572.

Similarly, § 207 is flanked by sections in the Act that explicitly provide for a private cause of action, and sections that explicitly exclude a private cause of action. The statutory scheme at 47 U.S.C. § 274(e) explicitly provides for a private right of action, while 47 U.S.C. §§ 255(f) and 613(j) specifically prohibit one. "[W]here Congress includes

---

[1] The Telecommunications Act of 1996 was codified at 47 U.S.C. §§ 201-276. As is often the case, § 207 of the Act does not correspond with 47 U.S.C. § 207.

3

particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Sturm*, 673 F.3d 1274, 1279 (10th Cir. 2012). Courts should "'ordinarily resist reading words or elements into a statute that do not appear on its face.'" *Id*. (*quoting Bates v. United States*, 522 U.S. 23, 29 (1997)).

Lending further support to Defendant's argument is 47 U.S.C. § 303(v), which provides that the FCC has "exclusive jurisdiction to regulate the provision of direct-to-home satellite services." Thus, whether the provision in Defendant's Rules and Regulations prohibiting the installation of outside satellite dishes violates § 207 appears to be an issue reserved exclusively for the FCC to decide.

In determining whether a private remedy is implicit in a statute that does not expressly provide for one, application of the four *Cort* factors is relevant: (1) does Plaintiff belong to a class for whose special benefit the statute was enacted; (2) is there any indication of legislative intent to create or deny a remedy; (3) is it consistent with the underlying legislative scheme to imply such a remedy; and (4) is the cause of action one that is traditionally delegated to state law. *Cort v. Ash*, 422 U.S. 66, 78 (1975).

In *Boughton v. Kristek*, the District of New Mexico relied on the Ninth Circuit's opinion in *Opera Plaza* and application of the four *Cort* factors in concluding that § 207 and 47 C.F.R. § 1.4000 do not give rise to a private right of action. *Boughton v. Kristek*, Case No. CIV-16-202, 2016 WL 10538355, at *5 (D.N.M. April 12, 2016). The court noted that while two of the *Cort* factors weighed in favor of a private right of action and two against, the most important factor, congressional intent, weighed against a private right

4

of action. *Id.; see also Conboy v. AT&T Corp.*, 241 F.3d 242, 252 (2d Cir. 2001) (noting that the Supreme Court instructed that the second factor – congressional intent – is the critical inquiry, and that the other factors are treated as proxies for congressional intent).

Applying the first two *Cort* factors, the Ninth Circuit in *Opera Plaza* held that § 207 did not confer jurisdiction on federal courts to hear a routine suit by a condominium homeowner's association to enforce its rules prohibiting satellite dishes in common areas. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 832 (9th Cir. 2004). In applying the second and most important *Cort* factor, the Ninth Circuit examined the language of § 207, the context in which it was passed, and its legislative history. *Id.* at 836. Section 207 empowers the FCC to promulgate regulations, but there is nothing in the language that contemplates parties will sue under the statute. *Id.* Further, the House Committee Report gives no indication that § 207 created a federal cause of action. *Id.* at 837. Section 207 is contained in Title II of the Telecommunications Act, which is entitled "Broadcast Services." Title II contains nine sections which basically instruct the FCC how to regulate broadcast services. Of significance, no portion of Title II "contemplates or in any way addresses litigation, and this suggests that no private cause of action exists under … § 207." *Id.*

Curiously, Plaintiff relies on *Opera Plaza* for its position that subject matter jurisdiction exists. Plaintiff argues the court in *Opera Plaza* suggested that if the defendant had been the plaintiff in that case a federal question would have been raised and the court would have had jurisdiction. However, the Ninth Circuit in *Opera Plaza* clearly found "that no private right of action exist[ed] under any of the statutes cited." *Id.* at 838.

5

Although 47 C.F.R. § 1.4000 provides that "[p]arties may petition … a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited," this section does not purport to create jurisdiction in a federal court. *Id*. at 836. In *Lightfoot*, the Supreme Court examined Fannie Mae's charter, which provided it with the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." *Lightfoot v. Cendant Mortgage Corp.,* 137 S.Ct. 553, 558-559 (2017). Writing for a unanimous court, Justice Sotomayor stated that "this Court has understood the phrase 'court of competent jurisdiction' as a reference to a court with an existing source of subject-matter jurisdiction." *Id*. at 561. The Court reasoned that Fannie Mae's "sue and to be sued" clause does not grant federal courts subject matter jurisdiction over all cases involving Fannie Mae. *Id.* Rather, "it permits suit in any state or federal court already endowed with subject-matter jurisdiction over the suit." *Id.*

Moreover, 47 C.F.R. § 1.4000 is a regulation passed by the FCC; it is not a statute adopted by Congress. And, the laws passed by Congress, not rules or regulations passed by an administrative agency, determine whether an implied cause of action exists. *Opera Plaza,* 376 F.3d at 836; *see, e.g., Redington*, 442 U.S. at 577, n. 18 ("the language of the statute and not the rules must control."); *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990) ("an agency may not bootstrap itself into an area in which it has no jurisdiction."); *Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."). Neither § 207 nor 47 C.F.R. § 1.4000 create a private cause of action.

### B. The requisite state action is lacking.

It is well settled that the Fourteenth Amendment limits only state action. *Ross v. Hatfield*, 640 F. Supp. 708, 709 (D. Kan. 1986); *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). Thus, for this Court to exercise jurisdiction over Plaintiff's constitutional claim, the Court must find the required state action. Defendant argues that state action is lacking. Without citing to any authority, Plaintiff asserts that Defendant has converted itself into a quasi-governmental agency by issuing fines and penalties when a property owner violates Defendant's Rules and Regulations.

"As a general matter the protections under the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'" *Tarkanian*, 488 U.S. at 191 (*quoting Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)). Thus, courts must "plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct … that is not." *Brentwood Acad.*, 531 U.S. at 295. State action may be found if, and only if, there is a "close nexus between the State and the challenged action" so that "seemingly private behavior may be fairly treated as that of the State itself." *Id.* (internal quotation marks omitted).

In *Shelley v. Kraemer,* a landmark case involving state action, the Supreme Court held that racially restrictive covenants "standing alone" did not amount to state action. *Shelley*, 334 U.S. 1, 13 (1948). However, state court enforcement of the racially restrictive covenants did amount to state action and a violation of the Fourteenth Amendment. *Id.* at 19-20. *Shelley* involved companion cases. In the first case, a husband and wife sued in

7

state court to enforce restrictive covenants against the occupancy or ownership of property by African Americans. In the second case, landowners sued to enforce a covenant that property should only be used or occupied by Caucasians.

The Court's reasoning in *Shelley* was straightforward: there was no state action involved in private parties voluntarily adhering to the terms of their agreement. *Id.* at 13. However, where the purposes of the private agreements were secured only by judicial enforcement, state action existed. *Id.* at 13-14. In other words, "but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint." *Id.* at 19.

In 2001, the Supreme Court granted certiorari to decide whether a statewide association incorporated to regulate interscholastic athletic competition among public and private secondary schools engaged in state action when it enforced a rule against a member school. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 290 (2001). The Court found that the association's nominally private character was "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings." *Id.* at 298. Public schools constituted 84 percent of the association's membership. *Id.* "Entwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards." *Id*. at 302.

Defendant here is an Oklahoma not-for-profit, non-stock corporation (homeowner's association) formed under Oklahoma's Unit Ownership Estate Act, OKLA. STAT. tit. 60, §§ 501-530. Defendant is tasked with managing the Hemingway Condominiums and their

common elements. [Doc. No. 1-9 at 2]. The owners of the condominium units make up the homeowner's association, and the association is governed by a board of directors who are private individuals. *Id*. at 3-4. Simply put, under these circumstances there is no entwinement with the state. Although Defendant imposes fines or penalties when a property owner violates a rule or regulation, this is not accomplished through the power of the state.

Applying the reasoning from *Shelley* and *Brentwood*, most courts agree that actions by homeowner's associations fall short of state action because a threat of judicial enforcement is not enough. In *Loren v. Sasser*, the Eleventh Circuit held that a property owners' association's denial of the homeowners' request to post "For Sale" signs in their front yard to expedite the sale of their homes did not constitute state action. *Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002). Citing to the nexus requirement identified in *Brentwood*, the court found unavailing the homeowners' argument that a threat of judicial enforcement of the covenant constituted state action. *Id.*

Similarly, in *Ross v. Hatfield*, the District of Kansas found that state action was lacking where a homeowner's association had a restrictive covenant that barred the plaintiffs from installing satellite television antennas. *Ross,* 640 F. Supp. at 710-712. The homeowners in *Ross* pointed to *Shelley*, 334 U.S. 1, for their assertion that state action was present. The court reasoned, however, that *Shelley* required "actual judicial enforcement of the covenant before state action may be found," and a threat to sue in state court was not sufficient to invoke state action. *Ross*, 640 F. Supp. at 710.

Here, the covenant has not been judicially enforced, nor has a suit been brought to

enforce it. Thus, there is no state action.

### C. Diversity jurisdiction does not exist.

In the alternative, Plaintiff suggests that diversity jurisdiction could be pleaded in an Amended Complaint. Plaintiff asserts that since the initial filing of the Complaint some of its properties were transferred to John Hamlin, and Mr. Hamlin "has relocated to Nevada for work and tax purposes and hence is no longer a resident of the state of Oklahoma." [Doc. No. 27 at 6]. Plaintiff's argument fails for two reasons.

First, "[f]ederal jurisdiction is determined based on the facts as they existed at the time the complaint was filed." *Ravenswood Inv. Co., L.P. v. Avalon Corr. Services*, 651 F.3d 1219, 1223 (10th Cir. 2011); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015). For diversity purposes a limited liability company is treated like a partnership or unincorporated association, and Supreme Court precedent is clear that in determining the citizenship of an unincorporated association, a federal court must examine the citizenship of each member of the entity. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1238-1239 (*citing Carden v. Arkoma Associates*, 494 U.S. 185, 195-196 (1990)).

There is no dispute that at the time the Complaint was filed there was no diversity jurisdiction. Mr. Hamlin, the only member of Sastin 2, LLC, was domiciled in Oklahoma when the Complaint was filed. [Doc. No. 1 at 1-2, 7]; [Doc. Nos. 3, 4]. The fact that he may have moved to Nevada post-filing does not cure the jurisdictional defect. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 575 (2004) ("allowing a citizenship change to cure the jurisdictional defect that existed at the time of filing would contravene

the principle articulated by Chief Justice Marshall in *Conolly*[2]. We decline to do today what the Court has refused to do for the past 175 years.").

Second, subject matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of citizenship, an amount in controversy which exceeds $75,000.00. *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008). Plaintiff has not pled facts necessary to establish that the amount in controversy exceeds $75,000.00.

## CONCLUSION

Plaintiff has not made an adequate showing that the Court has jurisdiction over this matter. Pursuant to FED. R. CIV. P. 12(h), Plaintiff's claims are dismissed without prejudice to their refiling.[3] Plaintiff's Second Motion to Compel Discovery [Doc. No. 16] is rendered moot by this Order.

IT IS SO ORDERED this 19th day of November 2018.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

---

[2] *Conolly v. Taylor*, 27 U.S. 556, 565 (1829) ("Where there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit.").

[3] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims).